## WORTHINGTON PUMP & MACHINERY CORPORATION v. INGERSOLL-RAND CO.
### No. 60.

Circuit Court of Appeals, Second Circuit.
Jan. 4, 1937.

Philipp, Sawyer, Rice & Kennedy, of New York City (Cleon J. Sawyer, James J. Kennedy, and James J. Kennedy, Jr., all of New York City, of counsel), for plaintiff-appellant.

Chester A. Adee, of New York City (Charles Kingsley and George F. Scull, both of New York City, of counsel), for defendant.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit relates to a condenser of the type commonly used at the outlet end of the exhaust line of a steam engine. The claim in suit covers broadly the combination of such a condenser and its hotwell with means for steam heating the condensate as it falls from the condenser into the hotwell and for using the condensate to prevent the escape of the heating steam into the condenser.

The only claim relied on reads: "1. The combination with a condenser and its hotwell for receiving the discharge water, of connections for supplying heating steam to the hotwell, and means for controlling the discharge water in its passage from the condenser to the hotwell to prevent the passage of the heating steam to the condenser."

Steam condensers provide a way for using the water in a steam boiler over and over again and not only afford a supply of pure water to the extent that the steam is returned to water and carried back into the boiler but also bring about a substantial saving in fuel over what would be required were the exhaust steam allowed to escape into the atmosphere and the boiler compensated for this loss by adding cold water from an outside source. The fuel saving use of the condensate to replenish the boiler is a most important feature and the saving is enhanced by heating the condensate after it leaves the condenser and before it is returned to the boiler from heat supplied by the exhaust steam itself, thereby using heat which otherwise would be wasted to cut down the fuel consumption of the boiler. This was old in the art before the patent in suit, for which the most that is claimed is a novel combination of condenser and hotwell having means for using only part of the exhaust steam to heat the condensate to the temperature desirable relative to pressure and for keeping all but a negligible amount of such steam out of the condenser.

Steam condensers operate both at atmospheric pressure and at near vacuum; the latter type being most efficient and largely used in modern construction. The patent in suit is not limited to a condenser of either type.

A steam condenser is constructed so as to permit the steam which enters it to spread out against a comparatively large cooling surface commonly consisting of many pipes through which cold water flows to carry off the heat drawn from the steam when it comes in contact with them. The condensate thus formed falls to the bottom of the condenser and thence to what is called a hotwell and from that returned to the boiler through the injector line. For present purposes further description of the condenser itself is unnecessary.

The patentee tapped the engine exhaust line just before it entered the condenser to

withdraw steam which he piped to the hotwell placed directly under the condenser and used both to collect the condensate and to serve as an open heater. In order to have the hotwell used for both purposes, some suitable way had to be provided to prevent an undue amount of the steam which he brought to the hotwell going on up into the condenser. This was necessary because condensate absorbs large quantities of air and has an especial avidity for oxygen which is a corroding agent in the boiler. So it is not desirable to supply to the boiler water bearing an excessive amount of oxygen. On the contrary, the nearer approach to the ideal in this respect is obtained when the oxygen content of the boiler supply water is kept as low as possible. The near vacuum condensers not only do that but decrease the back pressure on the engine through the exhaust line. To bring about the double advantage they are equipped with an air pump which draws off the air and vapor in the condenser, and to avoid overloading this pump it is desirable to trap the steam in the hotwell when that is used as a heater, for otherwise it would go in quantity into the condenser and interfere with the action of the air pump.

The patentee hit upon a form of trap which used a sheet of the condensate itself as the sealing means for his trap. He placed in the bottom of the condenser a circular weir over which the condensate would flow as soon as its quantity was sufficient to raise its level high enough. When it overflowed the weir, the condensate fell in a sheet to a splash plate from which it fell in turn to a perforated strainer plate that served both to remove foreign particles from the water and also to divide it into a sort of spraying rain as it fell down through the numerous holes. The heating steam met this rain below the perforated plate and brought the condensate up to the wanted temperature as it continued to fall down into the hotwell proper from where it was pumped back into the boiler. In order to overcome the likelihood of an air block, the patentee provided a small outlet at the top of the hotwell above the perforated plate into the condenser, but this was too small to allow the escape of steam except to such a slight extent that it could be disregarded. The continuous fall of the condensate over the lip of the weir formed a curtain of water which effectively blocked the passage of steam up through that opening and, if Grace disclosed anything new in this respect, it was in the way he so utilized this water curtain.

Another feature said to be new with Grace is the tapping of the exhaust line before it entered the condenser to take out a part only of the exhaust steam which he piped directly to the hotwell to use for heating the condensate there. This is said to have given his construction the advantage of automatic control of the amount of heat relative to the amount of condensate to be heated in that, as the steam pressure in the exhaust line rose and fell with the working of the engine, thereby supplying more or less steam to be condensed, the amount of steam withdrawn for heating the condensate would be greater or less correspondingly. That result would follow and, though Grace did see fit to put a valve in the withdrawal pipe, that only made manual control available in addition to this so-called automatic feature. The claim in suit, however, is not limited at all in this respect. It merely is tied to "connections for supplying heating steam to the hotwell" which might, so far as the claim goes, be of any suitable kind to supply heating steam from any suitable source not necessarily from the exhaust line. We only mention this in passing, however, and refrain from any discussion of permissible limitation of this part of the claim by the specifications for, if we assume without deciding that it is to be treated as limited to connections as disclosed for supplying heating steam from the exhaust line, there is no advance therein over the prior art.

British patent No. 13,848 to Hall-Brown for an improved condenser shows that as early as 1911 condensate was heated either by running all, or only a portion, of the exhaust steam into contact with it. Hall-Brown disclosed both ways of heating. He said in his specification in the course of his description of the type of construction which used only part of the exhaust steam for heating: "While the greater portion of the steam enters the condenser proper at the top, a certain amount passes down through the lower branch of the duct (e) and is condensed at the bottom of the condenser by the rain of condensed steam from the tubes. The steam acts to heat this water before the latter falls into the well (f)." And a little later he said: "In the construction just described the amount of heat given up by the entering steam to the water of condensation dripping from the tubes, while sufficient to be of advantage, is necessar-

ily comparatively small. In order that the water of condensation may be raised to a higher temperature by the entering steam, I may arrange to bring practically the whole, instead of only a small portion, of the entering steam into direct contact with the water of condensation."

He then described his alternative way of heating the condensate by using all of the exhaust steam for that purpose. It is said, and we think rightly, that condensers using all the exhaust for heating as in the alternative construction of Hall-Brown would often require more space than could possibly, or at least economically, be provided and so would not be practical for use with many large engines, but that does not limit the effect of his disclosure of a division of the exhaust steam and the use of only part of it for heating the condensate. Grace supplied heating steam in one of the ways of Hall-Brown and added nothing novel by way of invention.

All possibility of novelty in the Grace patent that remains lies in the combination of his water curtain sealing means with the old features. The patent has expired and we need not in this case decide whether the claim in suit is valid in view of the water curtain seal or not. It is suggested that a form of seal was disclosed in patent No. 506,292 issued to Wheeler & Lyon in 1893 but we think that both doubtful and of little moment now. A construction which will let water or other liquid pass freely and at the same time seal off the opposite flow of vapor, gas, or air is very old. The common U-trap so frequently used by plumbers is an effective way to do that which any one may use where it will work. The defendant's hotwell and heater does not infringe because it uses the U-trap seal and takes nothing from Grace.

The defendant lets the condensate drop into the hotwell, which is not itself used as a heater as in Grace. From the hotwell there is a pipe which conveys the condensate to an open heater supplied with heating steam coming from a tap into the exhaust line above the condenser. The condensate is broken up in the heater the better to withdraw heat from the steam, but the seal against the entry of the heating steam into the hotwell and thence into the condenser is nothing but the old U-trap, which is an available means since by using a separate heater the defendant has made it possible to use such an old type of trap. It follows that, if the water curtain seal

of the patent is but the equivalent of a U-trap, a question we do not decide, there is no invention and, if it is more so that there is a patentable difference, the defendant does not infringe.

Decree affirmed.